# Wathen v. Kentucky Distilleries & Warehouse Co.

(Decided October 26, 1910.)

## Appeal from Jefferson Circuit Court
(Chancery Branch, Second Division).

1. Contracts.—Where a purchaser of whiskey assumed to carry out the contracts made by the seller with persons to whom the seller had issued warehouse receipts, the purchaser was only bound to perform the conditions contained in the warehouse receipts issued by the seller before the contract was made; and if the seller voluntarily assumed to compensate the holders of the receipts for losses that he was not bound to protect them against by the terms of the receipts, he cannot compel the purchaser to reimburse him for sums so paid out.

2. Custom.—The fact that a number of distillers, including the purchaser, agreed among themselves that they would indemnify holders of warehouse receipts against losses that the receipts themselves did not provide indemnity for, and that in pursuance of the agreement they did so, was not such a custom as would

Vol. 140—27

have the effect of making the purchaser liable as between him and the seller for losses not provided against in the warehouse receipts issued by the seller.

3. Warehousemen—Duty of.—It is the duty of a warehouseman, independent of any contract duty, to exercise reasonable care to prevent loss or injury to property in his warehouse.

TYLER BARNETT, and DODD & DODD for appellant.

WM. MARSHALL BULLITT, BULLITT & BULLITT and KEITH L. BULLITT for appellees.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

On April 13, 1899, the appellant Wathen entered into a contract by which he sold to appellee his distillery plant. It was agreed in the contract that Wathen might continue to operate the distillery until June 1st, 1899, at which time possession should be given to the appellee company. At the time the contract was made, there was stored in several large United States government bonded warehouses connected with the distillery some 45,000 barrels of whisky, some of it owned by appellant, but the greater part owned by persons to whom appellant had sold it and issued warehouse receipts therefor. In addition to the whisky in the warehouses at the time the contract was entered into, appellant manufactured a large quantity between the date of the contract and June 1st, 1899, that was also stored in these United States government bonded warehouses. All of the whisky in these warehouses was in the exclusive custody and control of the United States government, and could only be withdrawn by the owner with the consent of the government and upon the payment of the tax due thereon. In clause 7 of the contract, it was stipulated that "It is further agreed and understood that the said warehouse company, its successors or assigns, will look after and care for all whiskies stored in the warehouse appurtenant to said distillery, as described and required in the warehouse receipts which may have been issued by said vendors, or either of them."

And in clause 8 that "It is further agreed that the J. B. Wathen and J. B. Wathen & Bro. Co., will sign such writings as the government may require, evidencing the consent of the vendors that the said distillery may be operated by the said warehouse company, or its lessees, and said warehouse company agrees to indemnify said

vendors and each of them against all loss, cost or damage, legal or extraordinary, which may accrue or arise from the acts and doings of said warehouse company after it shall have taken possession of the said distillery property and premises.''

The warehouse receipts issued, with the exception of the name of the holder and description of the property, read as follows:

''Received in our Distillery Bonded Warehouse No. 11L, 5th District of Kentucky, for account of and subject to the order of —————, deliverable only on the return of this warehouse receipt, and the written order of the holder thereof, and on payment of the United States Government tax, and all other taxes and storage at the rate of five cents per barrel per month from this date ————— barrels. * * * Loss or damage by fire, the elements, riots, accidents, evaporation and shrinkage at owner's risk; Provided, however, if this warehouse receipt is returned to us for regauge and ascertainment of loss before the expiration of four years from date of original entry into bond as required in Act of Congress of August 28, 1894, and the payment of all charges due at that time we guarantee the loss by shrinkage and evaporation up to that time, on each and every barrel covered by this warehouse receipt, shall not exceed one gallon over and above the allowance for shrinkage provided for in said act. No allowance for loss occurring after the goods have been four years in warehouse will be made.''

It will be observed that in each of these warehouse receipts it was stipulated that ''The loss by shrinkage and evaporation up to that time, on each and every barrel covered by this warehouse receipt, shall not exceed one gallon over and above the allowance for shrinkage provided for in said act. No allowance for loss occurring after the goods have been four years in warehouse will be made.''

It appears from the evidence that the appellant conceiving himself to be liable on the guaranty contained in these receipts, paid to various holders of receipts who withdrew their whisky between June 1st, 1899, and April 12, 1900, $1,749, on account of shrinkage or loss in the whisky covered by the warehouse receipts, over the allowance for such shrinkage or loss made by the Act of Congress, and the one gallon mentioned in the receipts. After paying the sum mentioned, appellant demanded of appellee payment of the amount, basing his claim for re-

embursement upon the obligation assumed by the appellee company in clause 7 of the contract to "look after and care for all whiskies stored in the warehouse appurtenant to said distillery as described and required in the warehouse receipts which may have been issued by said vendors, or either of them," and the stipulation in clause 8 of the contract, by which the appellee undertook to "indemnify said vendors and each of them against all loss, cost or damage, legal or extraordinary, which may accrue or arise from the acts and doings of said warehouse company after it shall have taken possession of the said distillery property and premises."

Afterwards, appellant filed two amended petitions, the first charged that the shrinkage in whisky in excess of that allowed by the government and the one gallon specified in the receipts was due to the failure of the appellee company to exercise reasonable care in attending to the whisky; and the second set up a custom of the trade that entered into, as he averred, the contract with the company, and extended from four to seven years the obligation to make good excessive loss.

The averments of these several petitions were denied, and it was also affirmatively alleged that the loss was due to the negligence of the appellant.

After the case was prepared for trial it was submitted to the chancellor and a judgment rendered in favor of appellant for $223.04, who, not satisfied with the amount allowed prosecutes this appeal.

We think it manifest that unless the custom that will be hereafter noticed modified the contract, that neither the appellant nor the company was liable to holders of warehouse receipts for any shrinkage in whisky that occurred after it had been in the warehouses for four years. The warehouse receipts expressly provided that the appellant should not be liable for any loss on account of shrinkage occurring after the whisky had been in the warehouse four years, and as the company in its contract only bound itself to assume the obligations specified in the warehouse receipts, it is plain that its liability is to be measured by the terms of the warehouse receipts unless these terms were changed by custom.

It is also made clear by the evidence that if the liability of the appellee company is to be measured alone by the conditions in the warehouse receipts that the appellant is not entitled to recover from it any sum approximating the amount claimed. A great deal of the whisky

upon which appellant paid to holders of warehouse receipts the value of the loss caused by excessive shrinkage had been in the warehouse more than four years, before it was withdrawn, and regauged to ascertain the loss, and it is not anywhere shown how much of this shrinkage occurred during the first four years it was in the warehouse or how much after the expiration of four years except as to whisky made in 1899. But it is the contention of appellant that as he was obliged to and did compensate the holders of receipts for the excess shrinkage in their whisky during the entire time it was in the warehouse, whether it was four, five, six or seven years, he was, therefore, entitled to recover the same from the company.

This claim is based on and grows out of this state of facts: When whisky is manufactured, it is at once placed in barrels, and these barrels immediately put in a United States government bonded warehouse and the government tax on each barrel is computed according to the number of gallons of whisky put into the barrel less the allowance for shrinkage. When the bonded period expires, that is the period fixed when the whisky must be removed from the warehouse by the owner, he must pay the government tax. Recognizing the fact that the quantity of whisky in the barrel when it was placed in the warehouse would be reduced by evaporation and other natural causes, before the end of the bonded period, at which time the tax must be paid and the whisky removed, Congress in 1875 passed an act fixing the period at which whisky might remain in a bonded warehouse at three years, and allowed seven and one-half gallons per barrel for shrinkage during that time, upon which quantity the government did not exact any tax when the whisky was withdrawn. In other words, if a barrel of whisky contained when it was put in the warehouse fifty gallons, the owner at the end of three years would only be required to pay tax on 42 1-2 gallons, but he must pay on this quantity, although the barrel might have in it only thirty gallons. In 1894 this law was amended, and the time whisky might remain in the bonded warehouse without paying the government tax was extended to eight years; and it was further provided that an allowance of nine gallons per barrel for evaporation would be made for the first four years the whisky remained in the warehouse, no allowance being made for evaporation after the expiration of four years. In March, 1899, this law was

again amended, continuing the period whisky might remain in the warehouse at eight years, but extended the allowance to 13 1-2 gallons per barrel for the first seven years that the whisky remained in the warehouse. At the time the act of March, 1899, became a law, all warehouse receipts then issued and outstanding contained, as does the receipt heretofore copied, the stipulation that "no allowance for loss occurring after the goods have been four years in the warehouse will be made." But, for the accommodation of holders of warehouse receipts the distillers of the state, including the appellee company, at a meeting held sometime in June, 1899, agreed that they would treat these receipts as if the word "seven" in place of "four" years was written therein, thereby extending their liability for excessive shrinkage to seven years in place of four years, and it is insisted that this agreement between the distillers had the effect of extending the liability of the appellee company on its contract with the appellant on account of excessive shrinkage from four to seven years. But, in our opinion, the fact that the distillers, including appellee company, voluntarily assumed this additional obligation cannot be held to modify or enlarge the contract between it and the appellant. The contract between them is plain and unambiguous. The appellee company by the terms of the contract simply agreed to assume whatever liability the appellant had undertaken in issuing these receipts, and it is manifest that the liability of the appellant was limited by the very words of the receipts to losses that occurred within the four years. The fact that appellant considered he was under an obligation to make good any loss that occurred within seven years cannot be allowed to impose this voluntary obligation assumed by appellant upon the appellee company or make it liable beyond the terms of its contract. Appellant was in fact under no duty to make good any losses on whisky covered by warehouse receipts after the expiration of four years, and the appellee company cannot be prejudiced by the voluntary payments made by appellant in excess of his contract obligation. As the liability of the appellee company was not affected by the custom, and there was no evidence, except as to whisky made in the spring of 1899, showing whether the excessive loss occurred during the first four years of its storage or after that time, appellant's right of recovery is limited to the negligence of the appellant company in failing to

properly care for the whisky after it came into its possession in April, 1899. Upon this point the evidence is very unsatisfactory. With the exception of a few barrels in which excessive loss was shown, that could only have resulted from a failure to give proper attention to the barrels, it is merely guess work as to what loss was sustained by the failure of the company to perform its duties as warehouseman in caring for the whisky. R. E. Wathen, a witness for appellant testified in detail concerning each item of loss that made in the aggregate the amount sued for, but his evidence does not show except as to a few barrels when the whisky upon which the loss was sustained was put in the warehouse, nor does it show whether the loss occurred before or after it had been in the warehouse four years. If the whisky in the warehouses, when the possession of the warehouses was delivered to appellee, had been regauged, and a reguage made when the whisky was taken out, this would have shown the loss sustained between the date it was taken out and the date of the first regauge. But it does not appear that any regauge was made, or attempted to be made by appellant when the possession of the whisky was delivered to the appellee company. In November, 1899, appellant wrote a letter to the appellee company asking it to have some 1,640 barrels of whisky regauged, but this request the appellee company declined to, or at least did not comply with, but the evidence shows that appellant could at any time at his own expense have had this whisky regauged, and his failure to have it regauged was not due to any fault on the part of appellee company.

The lower court found that the loss on account of appellee's negligence as warehouseman was the amount above specified, and after a careful reading of the record we are unable to say that this amount is not fully as much as the appellant is entitled to.

Wherefore, the judgment of the lower court is affirmed.